IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CRIMINAL ACTION** |
| | ) | |
| v. | ) | No. 08-10068-MLB |
| | ) | |
| GULBERTO BELTRAN-BELTRAN and | ) | |
| DANIEL LIZARRAGA-GARCIA, | ) | |
| | ) | |
| Defendant. | ) | |

<u>MEMORANDUM AND ORDER</u>

This matter comes before the court for consideration of the following motions:

1. Defendant Beltran-Beltran's motion to suppress evidence and request for discovery (Doc. 16)[1] and the government's response thereto (Doc. 22); and

2. Defendant Lizarraga-Garcia's motion to suppress evidence (Doc. 19) and memorandum in support (Doc. 20), and the government's response thereto (Doc. 22).

The motions are fully briefed and the court conducted an evidentiary hearing on July 15, 2008. Defendants' motions to suppress evidence are denied for the reasons herein.

I.    **Facts**

On January 17, 2008, at approximately 2:00 p.m., Kansas State Troopers Rule and Lytton were sitting in the median at milepost 153

---

[1] Defendant Beltran-Beltran asks the court to require the government to supply the videotapes of the vehicle stops. Those videos were provided to counsel and viewed by the court at the hearing. Therefore, defendant's motion for discovery is moot.

on I-70 in Ellis County, Kansas.  It was cold outside but the wind conditions were mild.  While watching the traffic, Rule noticed a Toyota pick-up truck being followed closely by a Volkswagen Jetta. Rule observed that the pick-up's bumper was sitting lower than normal but the body appeared to be raised.  At that time, Lytton left the median and entered the highway, planning to return to the office. Rule also left the median and sped up in order to observe the body of the pick-up.  Rule watched as the driver of the pick-up crossed over the middle line and then crossed back over the shoulder line with the right tire.  Rule then pulled up next to the pick-up and viewed the difference in height between the front of the pick-up and the bed. Because of the height difference, Rule suspected that the pick-up had a hidden compartment.  Rule is a very experienced trooper and has even instructed other troopers on how to determine if a vehicle has been modified to conceal compartments.

Rule decided to stop the driver for failing to maintain a single lane of traffic and activated his emergency lights.  The driver of the vehicle was defendant Lazarda-Garcia.  Rule initially conversed with Lazarda-Garcia in Spanish.  Rule asked Lazarda-Garcia where he was going.  Lazarda-Garcia responded, in English, that he was going to Pennsylvania for a construction job.  Rule asked Lazarda-Garcia for his license and registration.  The registration was in the name of Gulberto Beltran-Beltran.  Rule asked Lazarda-Garcia about his relationship with the owner of the pick-up.  Lazarda-Garcia responded that it was a friend.  Rule asked Lazarda-Garcia if he was traveling with the person in the Volkswagen.  Lazarda-Garcia said that he was not traveling with anyone.  Based upon closer inspection of the pick-

up, Rule felt certain that the bed of the truck had a hidden compartment. Rule then returned to his patrol vehicle.

At the same time, Lytton had pulled over the driver of the Volkswagen after he observed the vehicle drive over both the median and shoulder lines several times. When Lytton drove up next to the Volkswagen, he could not see the driver because he was leaning down towards the passenger side of the car. Lytton then activated his emergency lights and pulled the Volkswagen over on the side of the highway. The driver of the Volkswagen was Beltran-Beltran. Lytton asked for his license and registration. Beltran-Beltran was extremely nervous during the exchange. Beltran-Beltran's hands were noticeably shaking "really bad." Lytton asked Beltran-Beltran who owned the Volkswagen. Beltran-Beltran said it was a friend. Lytton asked for the name of his friend and Beltran-Beltran kept trying to look at the registration papers. Lytton told him to stop looking at the papers and tell him the name. Beltran-Beltran said his name was Phil. Lytton said "Phillip" and Beltran-Beltran said yes. The owner of the Volkswagen was Fidel Mendez. Lytton then returned to his patrol car.

After returning to his patrol vehicle, Rule called Lytton and asked him the name of the driver of the Volkswagen. Lytton told him that the driver's name was Gulberto Beltran-Beltran, the same name on the pick-up's registration. Rule told Lytton that Lazarda-Garcia said that he was not traveling with the Volkswagen but the registered owner of the pick-up was Beltran-Beltran. Rule then told Lytton that he believed that the pick-up had a false compartment and instructed Lytton to have Beltran-Beltran follow Lytton to the trooper office, which was approximately three miles from Lytton.

-3-

After speaking with Lytton, Rule exited his patrol car and returned the documents to Lazarda-Garcia.  Rule gave Lazarda-Garcia either a verbal or written warning and told him to have a nice day. Rule then stepped back away from the pick-up.  After stepping back, Rule returned to the pick-up and asked Lazarda-Garcia if he could ask him some more questions.  Lazarda-Garcia said okay.  Rule asked Lazarda-Garcia, in English, if there was anything illegal in the pick-up.  Lazarda-Garcia said no.  Rule then asked Lazarda-Garcia, in Spanish, if Rule could search the car for drugs.[2]  Rule then asked Lazarda-Garcia if he would follow him to the trooper office.  Lazarda-Garcia said okay.  Lytton did the same with Beltran-Beltran.  He did not return any of Beltran-Beltran's documents.

Rule arrived at the trooper station first and pulled the pick-up into a bay.  When Beltran-Beltran arrived, Rule asked him, in Spanish, if he could search the pick-up.  Beltran-Beltran said okay.  Rule then lifted the plastic bed liner out of the pick-up.  After doing so, Rule noticed multiple holes in the pick-up's bed.  Rule spotted a plastic bag through a hole.  Rule used a screwdriver to poke through the hole and into the plastic.  When Rule retrieved the screwdriver, it was covered with a white, powdery substance.  Rule also discovered a hidden door above one of the rear tires.  After cutting out the false bed in the truck, Rule found twenty-seven kilograms of cocaine.

## II.  Analysis

Both defendants assert that the stop and subsequent search of the pick-up were unconstitutional and ask that all evidence seized in

---

[2] The court's interpreter stated that the English translation of Rule's Spanish was, "Can I look your car by drugs?"

that search be suppressed.  The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  The Supreme Court has liberally interpreted "seizures" to encompass routine traffic stops, "even though the purpose of the stop is limited and the resulting detention quite brief."  See Delaware v. Prouse, 440 U.S. 648, 653 (1979).  "Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," the stops are analyzed under the principles articulated in Terry v. Ohio.  United States v. King, No. 05-6399 (10th Cir. Dec. 18, 2006).  The two-pronged standard espoused in Terry v. Ohio, 392 U.S. 1 (1968), thus applies, see United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001), and renders a traffic stop reasonable if "the officer's action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the interference in the first place."  Terry, 392 U.S. at 20.  An initial traffic stop is justified at its inception if it was "based on an observed traffic violation," or if "the officer has a reasonable articulable suspicion that a traffic . . . violation has occurred."  United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th Cir. 1998).

The court finds that troopers Rule and Lytton were justified in stopping both defendants' vehicles in the first instance.  Both vehicles were observed crossing the middle and shoulder lines.  See K.S.A. § 8-1522 (stating that the "vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.").  Rule observed Lizarraga-Garcia's

-5-

pick-up cross over the line and travel into the shoulder by at least two feet.  Lytton observed Beltran-Beltran swerve into the other lane on more than one occasion and observed him leaning down on the passenger seat.  The court finds that Rule and Lytton are credible witnesses who were justified in stopping defendants.[3]

Even when the initial stop is valid, any investigative detention must not last "longer than is necessary to effectuate the purpose of the stop."  <u>Florida v. Royer</u>, 460 U.S. 491, 500 (1983).  An officer "conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation."  <u>United States v. Bradford</u>, 423 F.3d 1149, 1156 (10th Cir. 2005).  The uncontroverted testimony shows that Rule approached Lizarraga-Garcia's pick-up upon initially stopping him and then obtained his driving documents.  Rule returned to his patrol car to check with Lytton and

---

[3]  Beltran-Beltran has filed a "supplemental argument on [his] motion to suppress."  (Doc. 23).  Beltran-Beltran asserts that the troopers were only stopping the vehicles because they intended to conduct a drug interdiction stop and had no other reason to stop defendants.  Defendants argue that the videos did not display defendants' failure to maintain a single lane of traffic.  But, as Rule testified, the troopers had no knowledge that defendants would commit traffic violations until after they had been committed.  The troopers do not drive around all day with their video equipment on.  The video equipment is activated at the time they activate their emergency lights.

Moreover, whether Rule and Lytton also had a subjective motive for pulling over defendants based on suspicion of drug possession is irrelevant.  <u>See</u> <u>United States v. Vercher</u>, 358 F.3d 1257, 1262 (10th Cir. 2004)(requiring only that an officer be able to "articulate a basis for a suspicion that a traffic violation might have been occurring"); <u>Hunnicutt</u>, 135 F.3d at 1348 (10th Cir. 1998)(stating that "the government need not show a violation actually occurred to justify an initial traffic stop" and that it is "irrelevant that the officer may have had other subjective motives for stopping the vehicle").  Rule and Lytton testified that they observed defendants committing traffic violations and this court has no reason to disbelieve those statements.

then re-approached Lizarraga-Garcia's pick-up and returned Lizarraga-Garcia's papers. Therefore, the scope of the traffic stop was reasonably related in scope to the circumstances which initially justified the interference. <u>Terry</u>, 392 U.S. at 20.

After the purpose of the traffic stop is complete, however, "further detention for purposes of questioning unrelated to the initial stop" is generally impermissible. <u>Bradford</u>, 423 F.3d at 1156-57. In general, "lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring. Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." <u>Hunnicutt</u>, 135 F.3d at 1349.

Rule returned Lizarraga-Garcia's documents, told him to have a nice day and took a couple of steps back to return to the patrol car. Rule then turned back towards the pick-up and asked Lizarraga-Garcia if he could ask him some more questions. Lizarraga-Garcia responded affirmatively. At that point, it was a consensual encounter. Lizarraga-Garcia then consented to the search of the pick-up and voluntarily followed Rule to the trooper office. The court finds that the consent to search was voluntary. However, even if the consent was not given voluntarily, i.e. if Lizarraga-Garcia did not understand the questioning, the court finds that there was reasonable suspicion to believe that illegal activity was occurring.

In determining whether reasonable suspicion exists, the court

-7-

again looks to the "totality of the circumstances" to determine if Rule had a "particularized and objective basis for suspecting legal wrongdoing." United States v. Arvizu, 534 U.S. 266, 273 (2002). Reasonable suspicion may exist even if each factor alone is "susceptible of innocent explanation." Id. at 277 (stating that "[a] determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct"). A determination of reasonable suspicion to detain after a traffic stop should be based on the totality of the circumstances. United States v. Salzano, 158 F.3d 1107, 1111 (10th Cir. 1998).

In making the determination, each factor is not to be considered in isolation because even though one factor alone may be innocently explained, the factors considered together can support reasonable suspicion. United States v. Lopez, 518 F.3d 790, 797 (10th Cir. 2008). The court must "be careful to judge the officer's conduct in light of common sense and ordinary human experience but also to grant deference to a trained law enforcement officer's ability to distinguish between innocent and suspicious circumstances." Id.

In this case, Rule, a highly experienced state trooper, suspected that the pick-up had a hidden compartment based on the modifications to the pick-up.[4] Also, Lizarraga-Garcia told Rule that he was not traveling with the Volkswagen even though the driver of the Volkswagen was the registered owner of the pick-up. These facts support a finding of reasonable suspicion that the pick-up contained

---

[4] Actually, one does not have to possess Trooper Rule's expertise to see that the bed of the pick-up has been modified to sit higher over the frame rails versus an unmodified pick-up.

a hidden compartment that is likely concealing criminal activity.

With respect to Beltran-Beltran, Lytton did not return his documents or ask Beltran-Beltran if he would agree to further questioning. A reasonable person in Beltran-Beltran's position would not have felt free to leave. Therefore, Beltran-Beltran's conduct cannot be considered consensual. Thus, the validity of the search and subsequent seizure of the cocaine turns on the existence of a reasonable and articulable suspicion of illegal activity. Again, as stated previously, Rule had a reasonable suspicion to believe that the pick-up contained a hidden compartment. Also, Beltran-Beltran was the registered owner of that pick-up. Moreover, Beltran-Beltran was unable to tell Lytton the name of the owner of the Volkswagen without looking at the registration papers. Lytton also testified that Beltran-Beltran's hands were shaking significantly during the entire exchange. The court finds that a reasonable suspicion existed to detain Beltran-Beltran for further questioning regarding potential illegal activity.

Beltran-Beltran argues that Rule should have asked his permission to search the pick-up when Rule discovered that he was the registered owner. Beltran-Beltran cites <u>Georgia v. Randolph</u>, 547 U.S. 103, 126 S. Ct. 1515 (2006), for the proposition that when a co-owner is present that person has a right to object to the search. Beltran-Beltran has correctly stated the holding of <u>Randolph</u>. However, <u>Randolph</u> also says the following:

> The second loose end is the significance of [<u>United States v. Matlock</u>, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed.2d 242 (1974)] and [<u>Illinois v. Rodriquez</u>, 497 U.S. 177, 186, 110 S. Ct. 2793, 111 L. Ed.2d 148] after today's decision. Although the <u>Matlock</u> defendant was not

present with the opportunity to object, he was in a squad car not far away; the <u>Rodriguez</u> defendant was actually asleep in the apartment, and the police might have roused him with a knock on the door before they entered with only the consent of an apparent co-tenant. If those cases are not to be undercut by today's holding, we have to admit that we are drawing a fine line; if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out.

This is the line we draw, and we think the formalism is justified. So long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it. For the very reason that <u>Rodriguez</u> held it would be unjustifiably impractical to require the police to take affirmative steps to confirm the actual authority of a consenting individual whose authority was apparent, we think it would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received.

<u>Randolph</u>, 547 U.S. at 121-122.

Therefore, Rule was not required to ask permission from Beltran-Beltran on the highway because Rule and Lytton did not have any knowledge at the time of the stop as to the identity of the owner of the pick-up. Beltran-Beltran could not contend that his placement away from the pick-up was due to the activities of the troopers. At the trooper office, Rule did ask Beltran-Beltran permission to search the pick-up. Beltran-Beltran responded affirmatively. However, based on the activities leading up to his presence at the trooper station, it is clear that driving to the station was not a voluntary act.

Therefore, even if it is assumed for purposes of discussion that Rule did not obtain a valid consent by Beltran-Beltran, Rule did obtain consent from Lizarraga-Garcia on the highway and there is no evidence that Beltran-Beltran objected to the search of the pick-up even though his consent could not be considered consensual.  See Randolph, 547 U.S. at 122-123.  Therefore, the search was valid based on the consent given by Lizarraga-Garcia.

Even if the search was not considered consensual based on Lizarraga-Garcia's alleged lack of English, the court finds that probable cause existed to search the pick-up.

> Probable cause to search a vehicle is established if, under the totality of the circumstances there is a fair probability that the car contains contraband or evidence. Probable cause is measured against an objective standard; hence, the subjective belief of an individual officer as to whether there is probable cause . . . is not dispositive.  In determining whether probable cause exists, an officer may draw inferences based on his own experience.

> As this court has previously indicated, it is well established that evidence of a hidden compartment can contribute to probable cause to search.  See also United States v. Vasquez-Castillo, 258 F.3d 1207, 1213 (10th Cir. 2001) (finding probable cause to search based on evidence of hidden compartment and smell of raw marijuana); United States v. Anderson, 114 F.3d 1059, 1066 (10th Cir. 1997) (holding discovery of "what appeared to be a hidden compartment in the gas tank," along with other evidence, sufficient to furnish probable cause); United States v. Nicholson, 17 F.3d 1294, 1297-98 (10th Cir. 1994) (considering, among other factors providing probable cause, a "four- or five-inch difference in the truck bottom and the floor which indicated a hidden compartment designed to carry contraband"); United States v. Arango, 912 F.2d 441, 447 (10th Cir. 1990) (finding probable cause to arrest based in part on evidence of hidden compartment).

> Whether probable cause to search a vehicle can be based on evidence of a hidden compartment depends on two factors: (1) the probative value of the evidence-that is, the likelihood that there really is a hidden compartment;

and (2) the likelihood that a vehicle with a hidden
compartment would, in the circumstances, be secreting
contraband. In this case the second factor is not a
concern. If the vehicle had a hidden compartment, it was
highly likely to contain contraband. Jirak testified that
he had found evidence of drug activity whenever a hidden
compartment had been discovered. This testimony is not
challenged on appeal and apparently was credited by the
district court. Moreover, this expert experience conforms
with common sense; it is hard to conceive of a legitimate
use for a large hidden storage compartment in any
vehicle, let alone one with the cargo space of a Ford
Expedition.

United States v. Jurado-Vallejo, 380 F.3d 1235, 1238-39 (10th Cir.
2004)(internal citations omitted).

       With regard to the first factor, Rule reasonably suspected that
there was a hidden compartment in the bed of the truck based on the
modifications made.  As discussed previously, Rule has significant
experience in detecting hidden compartments in vehicles which was not
challenged by defendants. Moreover, Lizarraga-Garcia denied traveling
with the Volkswagen even though Rule determined that the driver of the
Volkswagen was the registered owner of the pick-up.  The court finds
that based on Rule's knowledge, observations, experience and
expertise, there was a high likelihood that the pick-up contained a
hidden compartment.  With regard to the second factor, the Tenth
Circuit has said that when a vehicle does have a hidden compartment
it is likely to contain contraband.  Id.  Rule testified that in his
many years of experience, every time he discovered a hidden
compartment in a vehicle it either contained drugs or it had contained
drugs at some point.  Again, this testimony was not challenged by
defendants.  As the Tenth Circuit pointed out, it is hard to conceive
a legitimate use for a hidden compartment in a vehicle.
Jurado-Vallejo, 380 F.3d at 1239.

Therefore, the court finds that Troopers Rule and Lytton had probable cause to search the pick-up.[5]

## III.  Conclusion

Defendant Beltran-Beltran's motion to suppress evidence(Doc. 16) and defendant Lizarraga-Garcia's motion to suppress evidence (Doc. 19) are denied.


IT IS SO ORDERED.

Dated this  __23rd__  day of July 2008, at Wichita, Kansas.


s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE

---

[5] Defendants also assert that the destruction of the pick-up went beyond Lizarraga-Garcia's consent.  This argument is futile, however, because the court has found that probable cause existed to search the pick-up.  See United States v. Marquez, 337 F.3d 1203, 1208-09 (10th Cir. 2003)(discussing the scope of a search after consent to search was given).